## JAMES LAWLESS v. G. A. WRIGHT. ·

### Decided April 5, 1905.

**1.—State School Land—Forfeiture—Effect.**

The State has the power to forfeit, through a declaration of the Land Commissioner, a sale of State school land for nonpayment of interest due thereon, and such forfeiture reinvests the title in the State, notwithstanding the provision of the statute permitting a reinstatement of the sale, under certain conditions, upon payment of all interest due.

**2.—Same—Adverse Possession Broken.**

Where school land was paid out by and patented to plaintiff twenty years after the date of its sale by the State, and defendant claimed a part of the survey under the ten years statute of limitation, having had such part enclosed in his pasture for ten years, plaintiff was entitled to show that during such ten years' period the sale by the State had been forfeited for nonpayment of interest, and that the sale was not reinstated until nine months after such forfeiture, thus causing a break in the continuity of the adverse possession.

**3.—Same—Effect of Break—Tacking.**

Since limitation does not run against the State, defendant's possession during the nine months was not adverse to the true owner at that time, and so was not such possession as the statute requires, and after the continuity of the adverse possession was thus broken, defendant's possession after the reinstatement could not be tacked on to his possession prior to the forfeiture.

Appeal from the District Court of Baylor. Tried below before Hon. J. M. Morgan.

*D. A. Holman,* for appellant.—1. Upon the forfeiture of the Fancher purchase for nonpayment of interest on July 20, 1899, only seven years after Wright's enclosure of the premises, "the land instantly reverted to the government, and became a part of the public domain, and may be granted to another." Sayles' Civ. Stats., art. 4218 l; Holliman v. Peebles, 1 Texas, 700; Rivers v. Foote, 11 Texas, 337; Snodgrass v. Posey, 6 Texas Ct. Rep., 226; Waggoner v. Flack, 52 S. W. Rep., 584.

While thus held, the statute of limitations could not run against the State. Stanley v. Swalby, 85 Texas, 353; Parker v. Brown, 80 Texas, 557; Brown v. Sneed, 77 Texas, 474.

2. Wright had no interest whatever at the time of forfeiture, nor could have, until ten full consecutive years of adverse possession had transpired. His seven years of previous possession was no more effective than the first year, month or day. Kimbro v. Hamilton, 28 Texas, 565; Murchison v. Payne, 37 Texas, 305; Mosely v. Lee, 37 Texas, 480; Craig v. Cartwright, 65 Texas, 420.

3. A forfeiture of land for nonpayment of interest instantly reverts title to the State, and puts an end to all rights under that purchase, except reinstatement by original purchaser. Bates v. Bacon, 66 Texas, 349; Milam County v. Robertson, 33 Texas, 381; Bowerman v. Pope, 75 S. W. Rep., 1093.

Limitation could not run against plaintiff until his cause of action accrued; and from the forfeiture until the reinstatement plaintiff had no cause of action against defendant for possession. Smith v. Powers,

23 Texas, 34; Murchison v. Payne, 37 Texas, 305; Truehart v. Babcock, 49 Texas, 258.

*Dickson & Britain,* for appellee.—1. When the Land Commissioner reinstated the Fancher purchase, then it stood as if no forfeiture had ever occurred. Sayles' Rev. Stats., art. 4218 f; Highsmith v. Ussery, 25 Texas Supp., 105; Childs v. May, 73 Texas, 77; Beissner v. Texas Ex. Co., 1 Texas Civ. App., 458; Bigham v. Talbot, 63 Texas, 271; Shirley v. Railway Co., 10 S. W. Rep., 543; Cotton v. Lyter, 81 Texas, 11; Miller v. Earle, 4 Texas Civ. App., 361.

2. Limitation was not suspended during such forfeiture, but ran from the time it accrued. Otherwise there would be a break in plaintiff's title, and an impassable one. It was only necessary for defendant to hold adversely for the statutory period against the A. R. Fancher purchase, under which plaintiff claimed and none other. Converse v. Ringer, 24 S. W. Rep., 705; Longley v. Warren, 33 S. W. Rep., 304; Price v. Eardley, 77 S. W. Rep., 416.

3. Limitation could not run at any time against the State, but could run against A. R. Fancher or his assignee of the land in controversy. Dutton v. Thompson, 19 S. W. Rep., 1026; Dutton v. Thompson, 71 S. W. Rep., 544; Hodges v. Ross, 25 S. W. Rep., 976; Parker v. Brown, 16 S. W. Rep., 262.

4. The period of adverse possession of school lands between the application to purchase and the issue of the patent may be included in the ten years' limitations prescribed by statute. Thompson v. Dutton, 69 S. W. Rep., 641; Miller v. Moss, 65 Texas, 180.

5. When plaintiff's title under the A. R. Fancher file was reinstated, on April 11, 1900, his title stood as though no forfeiture had ever occurred and limitation was never interrupted. Rev. Stats., art. 4218; Anderson v. Neighbors, 59 S. W. Rep., 543; 24 Am. & Eng. Ency. Law (2d ed.), 246; 18 Ency. Dictionary, 3940; Childs v. Mays, 73 Texas, 76-78; Mitchell v. Mitchell, 84 Texas, 306; Cotton v. Lyter, 81 Texas, 12; Miller v. Earle, 15 S. W. Rep., 917.

FLY, ASSOCIATE JUSTICE.—This is an action of trespass to try title to one hundred and twelve and twenty-two one-hundredths acres of land lying in Baylor and Knox Counties, instituted by appellant against appellee. Appellant, in his second amended petition, specially pleaded his title as follows:

"Plaintiff shows that said land was classified, appraised and put on the market May 9, 1881, as dry agricultural land, at $2 per acre. That afterwards, to wit, on October 20, 1882, A. R. Fancher made application under the law to purchase the same from the State of Texas, and that the same was sold to him, That afterwards, to wit, on —— day of June, 1889, plaintiff purchased the same from A. R. Fancher. That afterwards, to wit, on July 20, 1899, the same was forfeited to the State for nonpayment of interest. That on the 1st day of September, 1899, the same was reclassified and appraised and put upon the market, notice having been given to the clerk of the County Court of Baylor County, Texas, and on the 5th day of September, 1899, D. Lawless applied to purchase the same from the State, and the same was awarded

to him. That his application, affidavit and obligation were all in due form of law and his first payment thereon duly paid. That on April 14, 1900, said D. Lawless relinquished to the State his said purchase, and the same was canceled, and thereupon the purchase of A. R. Fancher was reinstated according to law. That on February 13, 1902, plaintiff, as assignee of A. R. Fancher, paid the principal, interest and patent fees on said section, and the same was duly patented to plaintiff as assignee of A. R. Fancher."

Appellee excepted to that part of the petition above copied as being an attempt to go behind the patent, and to show a relinquishment of an award once made by the Commissioner of the General Land Office, for which there is no authority of law. Appellee pleaded not guilty and ten years' limitation. Appellant, in a supplemental petition, set up the forfeiture of Fancher's title by the State, on July 20, 1899, the reclassification and appraisement of the land, and the subsequent sale of the land by the State to D. Lawless, and his conveyance to the State on April 4, 1900. The special exceptions of appellee were sustained both as to the petition and supplemental petition, and, on the trial, proof as to the forfeiture of Fancher's title and the other matters set forth in the above copied pleadings was rejected by the court. The court instructed a verdict for appellee.

It appears from the pleadings, which, even though the rejected testimony had not been offered, would, in considering the propriety of sustaining the special exceptions, be taken as true, that the land was a part of a section of land sold by the State of Texas to A. R. Fancher on October 20, 1882; that in June, 1889, Fancher sold to appellant, and that on July 20, 1899, the State forfeited the title for nonpayment of interest. On September 1, 1899, the land was again classified and appraised and put upon the market, and on September 5, 1899, D. Lawless applied to purchase the land, and it was awarded to him. On April 14, 1900, D. Lawless relinquished the land to the State, and the award was canceled and the purchase of Fancher was reinstated. Fancher assigned the land to appellant, and on February 13, 1902, the land was patented to appellant as assignee of Fancher.

The evidence showed that appellee was the owner of a section of land lying contiguous to the section belonging to appellant, and that the land in controversy, which was a part of appellant's section, had been enclosed in appellee's pasture from the spring of 1892 to the time of the filing of this suit on June 16, 1903, and that he had been in continuous possession of the same for that period of time, and, unless the adverseness of his possession was interrupted by the fact that the State had forfeited Fancher's purchase, he had title to the land.

It is the settled law that the State of Texas has the power and authority to forfeit, through a declaration of the Land Commissioner, a sale of its lands for the nonpayment by the vendee of the interest on the purchase money. (Fristoe v. Blum, 92 Texas, 76; Standifer v. Wilson, 93 Texas, 232; Brightman v. Comanche County, 94 Texas, 599.) Such being the law, the act of the Land Commissioner in forfeiting the purchase of the land by Fancher had the effect of restoring such land to the public domain of the State. When the declaration of forfeiture was made, appellee had been in possession of the land for only

seven years, and, of course, had not perfected his title by ten years' limitation. Statutes of limitation not applying to the sovereign, the moment the forfeiture of Fancher's title went into effect the statutes of limitation as to the land was interrupted. After the forfeiture the land assumed the same status that it occupied before the sale to Fancher, and the State clearly had the right, which it exercised, of placing the land on the market again and selling it. It is provided in article 4218 l, Sayles' Statutes, that, when a forfeiture takes place, the land "shall revert to the particular fund to which it originally belonged, and be resold under the provisions of this chapter or any future law."

It is true that in article 4218 f it is provided that, "in any cases where lands have been forfeited to the State for the nonpayment of interest, the purchasers or their vendees may have their claims reinstated on their written request, by paying into the treasury the full amount of interest due on such claim up to the date of reinstatement, provided that no rights of third persons may have intervened." But that provision in no way weakens or affects the proposition that a forfeiture restores the land to the public domain and reinvests the title in the State. In this case, after the forfeiture, the State exercised its right to again sell the land, and had it not been for the voluntary relinquishment of his title by D. Lawless, the purchase made by Fancher could never have been reinstated. The forfeiture destroyed his claim to the land completely, and the privilege given to him to have it restored depended on certain payments and on the rights of others not intervening. That privilege did not limit the rights of the State in the land any more than if it had been provided that the original purchaser should have the right to purchase again, if no one else had purchased, and that credit would be given for the amounts already paid. In other words, the provision as to reinstatement did not have the effect of continuing the title, whether legal or equitable, in the purchaser after the forfeiture, and although he may have fully intended to have his claim reinstated at some future time, he could not, until that reinstatement was made, have maintained a suit for possession. He did not have any possession, or right of possession, to be invaded by appellee after the forfeiture, and limitation could not run against him.

When the adverse possession of appellee was interrupted by the forfeiture for a period of nearly nine months, the reacquisition of the property by appellant could not have destroyed the effect of the interruption and have made the seven years of adverse possession as effective as though there had been no interruption. To constitute adverse possession it must not only be actual, visible, notorious, distinct and hostile, as to the true owner, but it must be continuous. (Article 3349, Sayles' Stats.; Bracken v. Jones, 63 Texas, 184; Mhoon v. Cain, 77 Texas, 317.) When the continuity of the possession has been once broken it is not possible afterwards to take up its raveled threads and bind them together so as to make a continuous whole.

The forfeiture of the purchase by Fancher or his assignee, and the reinstatement of the same, is not analogous to cases where suit is instituted and then dismissed and reinstated. There can be no doubt, as held in Childs v. Mays (73 Texas, 76) and reiterated in other cases, that the reinstatement of a dismissed cause places it as though it had never

been dismissed, and this ruling is based on the statute. There is no similarity between that kind of case and one like this. .

The evidence which appellant desired to introduce had no reference to the patent, and was not for the purpose of affecting it in any manner, but was to meet the evidence as to limitation. That Fancher had purchased the land from the State in 1882 was admitted, and if he was the owner of the property during all the time up to the time the patent was issued, and up to the institution of suit, appellee showed a title by limitation. (Dutton v. Thompson, 96 Texas, 205.) It therefore became necessary for appellant to meet appellee's occupancy and show that he had not been the owner of the land during the whole time, but that his title had been forfeited and had reverted to the State. This he should have been allowed to plead and prove.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*